# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY BUFORD, | CASE NO. 1:01-cv-05192-SMS PC |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT and GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| WASCO STATE PRISON, et al., | (Docs. 244 & 254) |
| Defendants. | |
| _____ / | |

**Order on Defendants' Motion for Summary Judgment**

**I.     Procedural History**

Plaintiff Timothy Buford (hereinafter "Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on February 16, 2001. (Doc. 1.) After multiple screenings, dismissals, and amendments, the Court screened Plaintiff's Second Amended Complaint (Doc. 46) to 28 U.S.C. § 1915A, and found that it stated cognizable claims against Defendants Carbajal,[1] Bindle,[2] Huertas, Dobbs, Cheatham, Leong and Songer (hereinafter "Defendants") on Plaintiff's claim under the Americans with Disabilities Act (hereinafter "the ADA"). Fed. R. Civ. P. 8(a); *Erickson v.*

---

[1] In the operative pleading, Plaintiff identifies this defendant by the surname spelled "Carbahall." (Doc. 46.) However, in his motion which is the subject of this order, Plaintiff corrects the spelling of this defendant's surname to "Carbajal" -- which will be utilized in this order. (Doc. 244, p. 1.)

[2] In the operative pleading and throughout his filings, Plaintiff identifies this defendant by the surname spelled "Bindell." However, Defendants use the spelling of "Bindle" to identify this defendant, which the Court will utilize in this order.

1

*Pardus*, 551 U.S. 89, 93-94 (2007); *Alvarez v. Hill*, 518 F.3d 1152, 1157-58 (9th Cir. 2008).

Both parties have filed motions for summary judgment in this case. Plaintiff filed his motion for summary judgment on June 14, 2010. (Doc. 244.) Defendants filed an opposition to Plaintiff's motion on July 22, 2010. (Doc. 252.) On that same day, Defendants filed their "reply" to Plaintiff's undisputed statement of facts (Doc. 253), their own motion for summary judgment (Doc. 254), and their statement of undisputed facts in support of the defense motion (Doc. 255). Plaintiff filed an opposition to Defendants' motion for summary judgment on August 5, 2010 (Doc. 256), but did not file a reply to Defendants' opposition to his own motion for summary judgment.[3] Defendants filed a reply to Plaintiff's opposition to the defense motion on August 16, 2010. (Doc. 257.) The parties refer to the exhibits submitted by Plaintiff in support of his motion and to the exhibits Defendants submitted in support of their motion in both motions. Further, both sides only submitted evidence in support of their respective motions, rather than submitting evidence to oppose each other's motion, choosing instead to merely refer in their oppositions to the evidence they submitted in support of their own motion. The evidence and arguments presented in these motions are so intertwined as to necessitate addressing both motions in one order. Both motions raise the issue of whether Plaintiff's rights under the ADA were violated, though Defendants' motion also raises the issues of individual capacity suits and entitlement to qualified immunity. Accordingly, the issues raised in both motions and the evidence submitted by the parties will be addressed jointly herein. Both motions are deemed submitted.[4]

**II.    Summary Judgment Standard**

Summary judgment is appropriate when it is demonstrated that there exists no genuine

---

[3] In accordance with *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988), Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the court in an order filed on January 14, 2005. (Doc. 71.)

[4] Plaintiff's second amended complaint, both motions for summary judgment, oppositions, and replies have been reviewed. The Court declines to exhaustively list every argument forwarded, every fact recited, and every piece of evidence submitted by the parties. Omission in this findings and recommendation of reference to various arguments, facts, or evidence should not be interpreted by the parties as an indication that the Court overlooked that argument, fact, or piece of evidence.

issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It is the moving party's burden to establish that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *British Airways Board v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir. 1978).

"When the moving party does not have the burden of proof on the issue, he need show only that the opponent cannot sustain his burden at trial." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (*quoting* W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Issues of Material Fact 99 F.R.D. 465, 487 (1984)). "But where the moving party has the burden - the plaintiff on a claim for relief or the defendant on an affirmative defense - his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Id.* Thus, as to Plaintiff's motion for summary judgment, Plaintiff must demonstrate there is no triable issue as to the matters alleged in his complaint. *Id.* This requires Plaintiff to establish beyond controversy every essential element of his Eighth Amendment claim. *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Plaintiff's evidence is judged by the same standard of proof applicable at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

As to Defendant's motion for summary judgment, "where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Celotex*, 477 U.S. at 324. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322. "[A] complete failure of proof concerning an

essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id*. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party*, Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (*citing United*

*States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).

"[W]hen parties submit cross-motions for summary judgment, [e]ach motion must be considered on its own merits."  *Fair Hous. Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal quotations and citation omitted).  The parties bear the burden of supporting their motions and oppositions with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record they wish the Court to consider.  *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).  The Court will not undertake to mine the record for triable issues of fact.  *Id.*

### III.    The Second Amended Complaint[5]

Plaintiff states under penalty of perjury in the Second Amended Complaint, that on January 23, 2001, while he was on the exercise yard at Wasco State Prison - Reception Center (hereinafter "WSP-RC"), a prison alarm went off and a call went out for all inmates to get down on the ground in a prone position; Plaintiff remained standing, turned his back to show his mobility impaired vest, and extended his cane; Defendants Carbajal, Bindle, Huertas, and Dobbs yelled at Plaintiff to get down; Plaintiff ignored this command thinking it was directed elsewhere; Defendants Carbajal and Huertas then ordered Plaintiff by name to get down to which Plaintiff responded that he was disabled and had a cane for walking; Defendants Carbajal and Huertas told Plaintiff they did not care and directed him again to get down; Plaintiff refused the

---

[5] The Second Amended Complaint is summarized merely for background.  Evidence that raises a dispute of fact, or that shows a fact is undisputed is addressed and discussed under any applicable element(s) of a cause of action and/or issue.

order and was called over to the exercise gate by Defendants Carbajal and Huertas who ordered Plaintiff off the exercise yard; Plaintiff asked why and was told to go inside unless he could get down like all of the other inmates; Plaintiff told Defendants he was disabled and under ADA status, they should take it up with Plaintiff's doctor, and Plaintiff started back toward the exercise yard; Lieutenant Gonzales (not named as a defendant in this action) then ordered Plaintiff off the yard; Plaintiff told Lt. Gonzales he was ADA mobility impaired; Lt. Gonzales ordered Plaintiff off the yard a second time; with which Plaintiff complied and went inside the housing unit. (Doc. 46, 2nd Amd. Compl., ¶¶ 30-43.) The next day, a tower guard (not named as a defendant in this action) yelled down to Plaintiff that he heard about the incident and Plaintiff was lucky he hadn't been there; Plaintiff asked what the tower guard meant by that; the tower guard stated for Plaintiff to just not get down when he was there and an alarm sounded and Plaintiff would see what happens. (*Id.*, at ¶¶ 44-46.) The threat by the tower guard caused Plaintiff to fear his life and safety such that he did not go back to the exercise yard because of his inability to assume a prone position. (*Id.*, at ¶ 46.) Plaintiff alleges that he was confined to his cell twenty-three (23) hours a day seven days a week, for the "preceeding [sic]"[6] six month period. (*Id.*, at ¶ 47.) Plaintiff also alleges that Defendants Carbajal, Bindle, Huertas, Dobbs, and Cheatham "engaged" Defendant Dr. Leong to discontinue Plaintiff's medical chrono which had authorized him to remain standing during an alarm. (*Id.*, at ¶ 52.)

IV. **Legal Analysis**

   A. **The Americans with Disabilities Act ("ADA")**

Title II of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act ("RA") "both prohibit discrimination on the basis of disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir.2002). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Title II of the ADA applies to inmates within state prisons.

---

[6] It appears that Plaintiff's use of the word "preceding" was in error as the only logical interpretation is that Plaintiff intended to allege that he remained in his cell for six months *subsequent* to the events on January 23, 2001.

*Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206 (1998); *see also Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir.1997); *Duffy v. Riveland*, 98 F.3d 447, 453-56 (9th Cir.1996). "To establish a violation of Title II of the ADA, a plaintiff must show that (1)[he] is a qualified individual with a disability; (2)[he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." *Lovell*, 303 F.3d at 1052.

The appropriate test for intentional discrimination under the ADA is "deliberate indifference." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138-39 (9th Cir. 2001). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837).

### 1.  **Qualified Disability**

Defendants argue that, on January 23, 2001, Plaintiff did not have a qualifying disability under the ADA, did not have a chrono to permit him to remain standing when an alarm sounded, and was not discriminated against on the basis of any such possible disability. However, Plaintiff submitted evidence to show that, in their Supplemental Answer to the Second Amended Complaint (Doc. 160), which is Defendants' operative pleading in this case, Defendants admitted that, at the time alleged, Plaintiff was considered permanently disabled under the ADA. (Doc. 244, Plntf. MSJ, Exh. C, pp. 61-62.) Defendants have not moved to supplement and/or amend their Supplemental Answer to the Second Amended Complaint. Defendants did not address the issue raised by their admission either in their own motion and reply to Plaintiff's opposition, or in opposition to Plaintiff's motion for summary judgment. Defendants are not now allowed to retract this admission. This evidence meets Plaintiff's burden of proof on the issue that, at the time in question, Plaintiff was considered permanently disabled under the ADA. The next issue is whether, Plaintiff was subjected to exclusion or discrimination because of his disability.

## 2. Disability Based Exclusion/Discrimination

Even though Defendants admitted that at the time in issue, Plaintiff was considered permanently disabled under the ADA, Plaintiff's motion must be denied and Defendants' motion must be granted since Plaintiff's evidence and allegations in the Second Amended Complaint fail to meet his burden and/or show that any of the named Defendants acted with deliberate indifference to his qualified disability and/or caused a violation of Plaintiff's rights under the ADA.

The alleged act by Defendants Carbajal, Bindle, Huertas, and Dobbs of ordering Plaintiff to get down when the alarm sounded, without more, does not amount to acting in deliberate indifference to a serious risk of injury to Plaintiff. Plaintiff argues and alleges that these Defendants should not have yelled to him to get down when the alarm sounded on January 23, 2001 because he had a chrono allowing him to remain standing during alarms. (Doc. 244, Plntf. Decl., ¶7, Plntf. UF No. 6.) In support of this argument, the only evidence submitted by Plaintiff is the WSP-RC Medical Chrono which issued on his arrival at WSP-RC, on November 6, 2002, which Plaintiff asserts states "no laying to the ground" under "Other Restrictions." (Doc. 244, Plntf. UF, No. 1, Exh. 1, p. 27.) The handwriting on this form is extremely difficult to read such that it cannot be confirmed that any of the handwritten words state a restriction of "no laying to the ground." (Doc. 244, Plntf. Exh. 1, p. 27.) Accordingly, Plaintiff has not established that he had a chrono in effect on January 23, 2001 that permitted him to remain standing during an alarm such that the actions of Defendants Carbajal, Bindle, Huertas, and Dobbs would have amounted to deliberate indifference to a risk of serious injury to Plaintiff when they yelled at Plaintiff to get down when the alarm sounded.

Defendants admit that Defendant Dr. Leong's handwriting is difficult to read, but assert that the note actually states "no lifting more than 10 lbs and no long sitting job." (Doc. 255, Def. UF No. 5, p. 2.) This explanation of the writing on the note appears slightly closer to the actual scribbles on the page, though the handwriting is not clear enough to unequivocally accept this interpretation as accurate for summary judgment purposes. Defendants did not submit a declaration from Defendant Dr. Leong which would have been definitive on the point. Further,

Defendants argument that Plaintiff did not have a chrono to remain standing and attacks on evidence submitted by Plaintiff does not equate to a submission of evidence to establish that no such chrono existed for Plaintiff on January 23, 2001.  Thus, the issue of whether Plaintiff had a chrono to allow him to remain standing on January 23, 2001 is not proven so as to be utilized as a definitive indicator whether Defendants Carbajal, Bindle, Huertas, and Dobbs acted with deliberate indifference by ordering Plaintiff to get down when the alarm sounded.

Plaintiff also alleges that the policy at WSP-RC in January of 2001 was that any inmate utilizing a wheelchair, walker, or cane was not required to get down on the ground when an alarm sounded.  (Doc. 244, Plntf. Brief, 16:2-4 &16-20, Plntf. UF Nos. 31-35.)[7]  In support of this argument, Plaintiff submits his own declaration and a copy of the WSP-RC Inmate Orientation Manual.  (Doc. 244, Plntf. Decl. ¶¶4, 9; Plntf Exh. 7.)  Plaintiff's declaration lacks foundation as to his ability to definitively address WSP-RC policies -- other than for the limited purpose of showing how he has experienced their application; yet his declaration is devoid of comment on his experience of the application of WSP-RC policies other than on January 23, 2001.  (Doc. 244, Plntf. Decl. ¶¶ 4, 9.)  Further, the copy of the WSP-RC Inmate Orientation Manual which Plaintiff submitted notes an expiration date of June 2003.  (Doc. 244, Plntf Exh. 7.)  Plaintiff argues that the manual was in existence and operative in January 2001 and that the June 2003 expiration date should be considered similar to the expiration date on a loaf of bread or a gallon of milk (i.e. it is good for any date up to the expiration date) such that the orientation

---

[7] Both Plaintiff and Defendants submit arguments regarding the applicability of, and compliance by Defendants with, a policy (found in the WSP-RC Orientation Manual that expires in June of 2003) that Plaintiff alleges was in effect in January of 2001, that allowed inmates with a walker, wheelchair, or walking cane to remain standing when alarms sounded. However, the existence of regulations and/or policies governing the conduct of prison employees does not necessarily entitle Plaintiff to sue civilly to enforce the regulations or to sue for damages based on violation of the regulations. The Court has found no authority to support a finding that there is an implied private right of action under the policy in question and Plaintiff has provided none. Further, "[t]his court has held that 'a violation of state . . . law can serve as the basis of a [S]ection 1983 action "[w]here the violation of state law causes the deprivation of rights protected by the Constitution." ' " *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1482 (9th Cir. 1993) (*quoting Draper v. Coombs*, 792 F.2d 915, 921 (9th Cir. 1986) (*quoting Wirth v. Surles*, 562 F.2d 319, 322 (4th Cir. 1977), cert. denied, 435 U.S. 933 (1978))). Finally, the only claim Plaintiff delineated under state law in the Second Amended Complaint was for intentional infliction of emotional distress -- which was dismissed as not cognizable. (Doc. 55.) Thus, Plaintiff's claims are appropriately analyzed solely under the applicable standards for violation of Plaintiff's rights under the ADA so as to equate to deprivation of rights protected by the Constitution. Accordingly, this policy is considered only as to whether it existed in January 23, 2001 such that any lack of compliance by Defendants may have amounted to deliberate indifference.

1  manual must have been in effect on January 23, 2001.  (Doc. 256, Plntf. Opp., p. 9.)  However,
2  without evidence of the date that the manual originated, the Court cannot accept the assumption
3  that it was in effect in January of 2001.  It could just as likely have been generated and
4  implemented in June of 2002, a year before its expiration date, or even in June of 2001, two years
5  before its expiration date – both of which would render it inapplicable to events that occurred in
6  January of 2001.  Defendants argue that, if such a policy existed, it would have been a complete
7  defense for Plaintiff to raise when he received the RVR for not getting down on January 23, 2001
8  and there would have been no need for Plaintiff subsequently to have requested the issuance of
9  an order allowing him to stand during alarms, but that Plaintiff did not raise any such policy as a
10 defense to that RVR and subsequently requested an order to be allowed to remain standing --
11 both of which logically show that no policy existed in January of 2001 which would have
12 allowed an inmate with a cane to remain standing during an alarm.  (Doc. 252, Def. Opp, 6:4-10;
13 Doc. 255, Def. UF Nos. 11, 12.)  Further, for the sake of, and limited only to their reply to
14 Plaintiff's opposition, Defendants argue that, if that policy was in effect in January of 2001, it
15 stated that inmates with canes were to remain still "until directed by responding staff to an
16 appropriate area."  (Doc. 257, Def. Opp, 2:5-9.)  Defendants argue that the policy does not state
17 where the "appropriate area" is/was such that Plaintiff's being directed to move inside when the
18 alarm sounded and he did not get down would have complied with any such policy.  (*Id.*)

19        Plaintiff has not established that:  (1) that the WSP-RC Inmate Orientation Manual which
20 expired in June 2003 was in effect in January of 2001 such that failure to comply with its
21 provisions amounted to deliberate indifference on the part of Defendants Carbajal, Bindle,
22 Huertas, and Dobbs; or (2) that being directed inside after remaining standing when an alarm
23 sounded constituted a violation of that policy and that any such policy violation equated to a *per*
24 *se* violation of the ADA.  Defendants have established that the WSP-RC Inmate Orientation
25 Manual which expired in June 2003 was not in effect in January of 2001 such that they were not
26 required to comply with its' provisions and were not deliberately indifferent to Plaintiff by failing
27 to do so.
28 / / /

Plaintiff also argues that he was wearing a mobility impaired vest such that upon seeing Plaintiff in the vest, Defendants should not have ordered him to get down, he should not have been ordered off the exercise yard for not getting down, nor should he have been threatened by the unknown tower guard if he were to fail to get down when an alarm sounded in the future. (Doc. 244, Plntf. Decl., ¶ 4; Plntf. UF Nos. 13, 15; Plntf. Brief, 16:16-20.) However, Plaintiff also declares that his safety vest "was not necessary" since his condition was obvious and reasonable modification or accommodation should have been made. (Doc. 244, Plntf. Decl., ¶ 10; Plntf. Brief, 17:4-14.) Plaintiff does not offer any evidence on this point other than his own declaration. Defendants argue and submit evidence to show that on December 12, 2000, Plaintiff received a response to an administrative appeal (in which he requested a mobility impaired vest) that was denied due to lack of medical documentation. (Doc. 254-1, Def. P&A, 19:16-20; Doc. 244, Plntf. Exh 4, 35, 36.) The only order for a safety vest was issued roughly six months after the date at issue in this action, on June 20, 2001 by Dr. Hoang. (Doc. 254-1, Def. P&A, 19:19-20; Doc. 244, Plntf. Exh. H, 71, 72.)

Accordingly, Plaintiff fails to meet his burden to establish that he had a medically ordered vest warning that he was mobility impaired on January 23, 2001. Defendants have met their burden to establish that Plaintiff did not have a medically ordered impaired mobility vest on January 23, 2001.

However, even if Plaintiff had proven that he had a medical basis which allowed him to remain standing during an alarm, he has not shown that any Defendant(s) actually knew and/or drew the inference that Plaintiff was not required to get down on the ground when an alarm sounded and that ordering him to do so would risk causing Plaintiff serious harm, or that any of the named Defendants violated his rights under the ADA..

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between

11

the actions of the defendants and the deprivation alleged to have been suffered by a plaintiff. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). In order to state a claim for relief under section 1983, Plaintiff must link each Defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.[8]

Regardless of whether Plaintiff was allowed to remain standing during alarms because there was a policy in force, Plaintiff had a medical chrono, or was wearing a vest, Plaintiff did not allege and neither argued nor submitted evidence to establish that any violation of his rights under the ADA was caused by the named Defendants in this action which provides further basis to deny Plaintiff's motion for summary judgment and to grant Defendants' motion for summary judgment.

Plaintiff's claimed violation of his rights under the ADA is based on his allegation that after being ordered to get down during the alarm on January 23, 2001 and ordered off the exercise yard, he was unable to access the exercise yard for fear of being shot. These allegations are not sufficiently linked to any of the Defendants named in this action to be cognizable.

To begin with, Plaintiff neither alleged, nor submitted any evidence to show that Defendants Carbajal, Bindle, Huertas, and/or Dobbs actually forced Plaintiff to get down on the ground; rather, they told Plaintiff to get down, and when he did not comply, he was ultimately directed to go inside by Lt. Gonzales (who is not a defendant in this action), and received a disciplinary report and confinement to his cell for two days. Further, Plaintiff's allegations show

---

[8] A complaint or portion thereof must be dismissed if a prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

that he made a conscious choice not to go back on the exercise yard based on the statement by the tower guard (who is not a defendant in this action) combined with the WSP-RC policy not to fire a warning shot -- which fails to provide evidence that he was denied the opportunity to go out on the exercise yard as a result of his disability and/or that Plaintiff's engaging in such activity was prohibited, or in any way restricted by Defendants Carbajal, Bindle, Huertas, and/or Dobbs.

As to Defendant Dr. Leong, Defendants submit evidence to show that Defendant Dr. Leong saw Plaintiff on February 5, 2001 (some twelve days after the incident) at which time he granted Plaintiff's request of ordering a chrono permitting him to stand during an alarm. (*Id.*, DUF. No. 14.) Defendant Dr. Leong rescinded this chrono on February 21, 2001. (*Id.*, DUF. No. 15.) Since Plaintiff alleges that he was restricted from going out on the yard based on his feeling that it was unsafe for him to do so for some six months subsequent to the January 23rd incident, evidence that approximately twelve days after the incident Defendant Dr. Leong ordered a chrono permitting Plaintiff to stand when alarms sounded is sufficient to show that Defendant Dr. Leong actually took action to enable Plaintiff to go out on the exercise yard. This, coupled with the fact that Plaintiff was released on parole some six days after Defendant Dr. Leong's chrono was rescinded (*id.*, DUF. No. 3), is sufficient to meet Defendant Dr. Leong's burden of showing that he did not discriminate against Plaintiff or cause him to be excluded from activities because of any disability Plaintiff may have had and to show that he did not act in deliberate indifference to a risk of serious harm to Plaintiff. This same evidence also shows that Plaintiff was released roughly a month after the January 23rd incident which contradicts the allegation in the Second Amended Complaint that he went without outdoor exercise for six months after the January 23rd incident. Plaintiff neither argued, nor submitted any evidence to attempt to prove that Defendant Dr. Leong engaged in any actions that impacted Plaintiff's ability to go out on the exercise yard and/or to secure a chrono permitting him to remain standing if an alarm sounded, or to otherwise show that he was deliberately indifferent to Plaintiff's condition.

Defendants also submit evidence to show that Defendant Cheatham was a Medical Technical Assistant whose only involvement was to note Defendant Dr. Leong's February 21, 2001 order as part of procedures to assure that medical orders were communicated to the

appropriate facilitating personnel. (Doc. 255, DUF Nos. 15, 16.) Merely noting and communicating a physician's orders does not rise to the level of action or inaction by Defendant Cheatham so as to have excluded Plaintiff from participation in or otherwise discriminated against Plaintiff with regard to a public entity's services, programs, or activities because of Plaintiff's disability. This meets Defendants' burden of establishing that Defendant Cheatham did not engage in any action or inaction which directly affected Plaintiff's ability to go out on the exercise yard and/or to remain standing when an alarm sounded. Plaintiff neither argued, nor submitted any evidence to show that Defendant Cheatham did anything other than note Defendant Dr. Leong's order; nor did Plaintiff argue or submit any evidence to show that Defendant Cheatham knew that by noting Defendant Dr. Leong's order Plaintiff would risk serious injury so as to have amounted to deliberate indifference to Plaintiff's condition.

Finally, as to Defendant Dr. Songer, Defendants submit evidence to show that, on July 23, 2001, the day Plaintiff was transferred to SATF, Defendant Dr. Songer issued a medical order requiring Plaintiff to get down on the ground when an alarm sounded. (*Id.*, DUF Nos. 3, 18.) Defendants argue that even if Defendant Dr. Songer issued this order in error, it is of no consequence as it had no impact on Plaintiff since he transferred that very day to another facility. (Doc. 254-1, P&A, 17:6-17.) The Court concurs that this evidence meets Defendants' burden of proof as it shows that Defendant Dr. Songer's actions did not cause Plaintiff to be excluded from, or denied the benefit of accessing the exercise yard. Plaintiff neither argued, nor submitted any evidence to attempt to prove that Defendant Dr. Songer did anything other than issue an order that Plaintiff was to get down on the ground when an alarm sounded on the day that Plaintiff was transferred to SATF, or that this order ever impacted Plaintiff in any way.

Accordingly, Plaintiff failed establish deliberate indifference to a risk of serious harm because of his qualified disability and failed to sufficiently link any of the named defendants in this action to the events of which he complains such that Defendants' motion for summary judgment should be granted and Plaintiff's motion for summary judgment should be denied.

/ / /

/ /

B. **Individual Capacity**

In their motion, Defendants argue that they are entitled to entry of judgment because Plaintiff has not sued any of the Defendants in their official capacities. (Doc. 254-1, P&A, 8:7-19.)

Plaintiff is precluded from holding Defendants liable in their individual capacities for violations of his rights under the ADA. "[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act." *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002). In the Second Amended Complaint Plaintiff states, "Defendants of WSP-RC are at all times hereinafter sued individually as employees for the State of California in engaging in the conduct described herein." (Doc. 46, 2nd Amd. Compl., ¶ 3.) Plaintiff did not sue any of the Defendants in their official capacities. Plaintiff argues in his opposition that the holding in *Vinson* does not apply to this case since it was decided after the events complained of occurred and that he "has made clear that the 'individually' he speaks of refer [sic] only to 'WSP-RC Defendants being sued "separately" as individuals, not negating official capacity.' " (Doc. 256, Opp., 2:1-15) (emphasis and internal quotations in the original). However, *Vinson* is controlling as it did not create a right and/or delineate the elements of a cause of action, but rather merely interpreted the parameters of liability under the ADA which existed at the time of the events in question. Back in 2001, when the events alleged in the Second Amended Complaint occurred, the ADA did not state that it applied to acts by an individual, but rather stated that it applied to acts "of a public entity," 42 U.S.C. § 12132, such that Plaintiff could have, but chose not to, name and pursue the proper public entity in his Second Amended Complaint.[9] Further, while it

---

[9] Plaintiff states in his motion for summary judgment that the "State of California is surmissed [sic] to be a defendant joined in this action." (Doc. 244, p. 8, n. 1.) However, almost two years after filing the Second Amended Complaint, Plaintiff filed a motion for leave to file a third amended complaint seeking, among other things, to add the State of California as a Defendant in this action, which was denied base on lapse of the applicable statute of limitations. (Docs. 135, 147.) Further, in his statement of factual disputes in his opposition to Defendants' motion, Plaintiff states "Undisputed that the State of California is a party to this action, Undisputed by Plaintiff as not a party to this action." (Doc. 256, ¶ 4.) The State of California is not a party to this action, and Plaintiff may not now expand the scope of this litigation via opposition to defendants' motion for summary judgment. *See Gilmore v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).

15

appears that Plaintiff now attempts to pursue Defendants in their official capacities, he did not do so in the Second Amended Complaint which is the operative pleading to which he is bound when considering a motion for summary judgment. Defendants are entitled to summary judgment because Plaintiff sued them only in their individual capacities.

Accordingly, for all of the reasons stated above, Defendants are entitled to summary judgment on Plaintiff's claims under the ADA.

Further, since both motions are resolved in Defendants' favor, the Court declines to address Defendants' claim of qualified immunity

## VII. ORDER

For the reasons set forth herein, the Court finds that Plaintiff has not met his burden such that his motion for summary judgment should be denied. However, Defendants have met their burden and are entitled to summary judgment on Plaintiff's claims under the ADA against Defendants Carbajal, Bindle, Huertas, Dobbs, Cheatham, Dr. Leong, and Dr. Songer, and that Plaintiff is prohibited from pursuing any of these Defendants in their individual capacities for violations of the ADA.

Accordingly, it is HEREBY ORDERED as follows:

1. Plaintiff's motion for summary judgment, filed on June 14, 2010 (Doc. 244) is DENIED;

2. The motion for summary judgment, filed July 22, 2010 (Doc. 254), by Defendants Carbajal, Bindle, Huertas, Dobbs, Cheatham, Dr. Leong, and Dr. Songer is GRANTED; and

3. The Clerk of the Court is directed to enter judgment for Defendants Carbajal, Bindle, Huertas, Dobbs, Cheatham, Dr. Leong, and Dr. Songer and close the case.

IT IS SO ORDERED.

**Dated:   November 2, 2010**          /s/ Sandra M. Snyder
                                       UNITED STATES MAGISTRATE JUDGE